No CV30

FILED
CLERK, U.S. DISTRICT COURT
6/19/19
CENTRAL DISTRICT OF CALIFORNIA
BY: CS    DEPUTY

1   LA'MONTE DESHAWN SIMS #AP1326 (THUGTORIOUSG'S-ACTIVECHUCKSS.COM)
2   KERN VALLEY STATE PRISON (B4#104)
3   P.O. BOX 5102
4   DELANO, CA 93216
5   (PETITIONER IN PRO SE)
6
7            UNITED STATES DISTRICT COURT
8       CENTRAL DISTRICT OF CALIFORNIA
9         LACV1904429               CAS(JEMx)
10  THUGTORIOUS G'S-ACTIVECHUCKSS  ) CASE NO.
11                      Plaintiff,  ) [COMPLAINT FOR COPYRIGHT INFRINGEMEN
12           V.                     ) AND UNFAIR COMPETITION],
13  AMAZON.COM, et. al.             ) [MOTIONS FOR PRELIMINARY INJUNCTIVE
14                    Defendant(s)  ) RELIEF],
15                                  ) [SUMMONS].
16
17            I) JURISDICTION
18
19       Federal districts courts have exclusive jurisdiction of actions
20  involving copyrights arising under federal statute [28 U.S.C. section
21  1338(a)]. Federal district courts also have jurisdiction of a civil
22  action for unfair competition joined with a substantial, related
23  copyright claim [28 U.S.C. section 1338(b)]. A plaintiff in an
24  infringement action, in addition to obtaining damages from
25  an infringement may obtain temporary and final injunctive relief,
26  to prevent or restrain infringement of a copyright [17 U.S.C section
27  502, 511(b); Fed. R. Civ. P., Rule 65 (injunctions generally).

(1)

LODGED
CLERK, U.S. DISTRICT COURT
MAY 22 2019
CENTRAL DISTRICT OF CALIFORNIA
BY: DEPUTY

RECEIVED
CLERK, U.S. DISTRICT COURT
MAY 20 2019
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

**II) DEFENDANTS**

1) AMAZON.COM, INC. (USA)(UK)(IND)(MEXICO)(FRANCE)°. [ADRIAN GARVER] 1(888)280-433
(206)266-4064°, PO BOX 81226 Seattle, Washington, 98108.

2) SPOTIFY U.S.A. INC - SPOTIFY AB, INC.°, [JAMES DUFFET SMITH]°, 45 West 18 street,
7th Floor NEW YORK, NEW YORK, 10011°, REGERINGS GATEN 19,, S.E-1153 STOCKHOLM,
SWEEDEN, SE, 5567037485

3) EBAY, INC.°,                                    (801)545-1800°,583 WEST EBAY.,
DRAPER, UTAH, 84020

4) RADIONOMY°, [GILLES BINDELS] 33 EAST 33rd STREET (SUITE 801) NY, NY,
10016°, 50 RUE DE PARADIS, 75010 PARIS, FRANCE

5) YARDDOWN MUZIK, INC.°, [CEO WESLEY CRUNK] 43618 RUCKER CT. LANCASTER,
CA, 93535

6) YOUTUBE.COM-GOOGLE INC.°, [JOEL KLIKBERG] 1008 LAKE STREET UNIT G, VENICE,
CA, 90291°, [JUDITH KEENE, ESQ HOLZER LAW PC, 216 16th street suite 1350, DEN, CO
80202°, 1500-771 HORNY STREET, VANCOUVER, B.C, CANADA, V6 22T3

7) D.GAF RECORDS°, [DT BANG DAT]

8) SOUNDCLOUD LIMITED°, [CEO-KERRY TRAINOR] RHEINBERGER STREET 76/77
10115, BERLIN

9) HULKSHARE, LIMITED°, [RICHARD G. SANDERS, JR.] AARON & SANDERS, PLLC
11 L-4 AVE. (STE. 606) NASHVILLE, TENNESSEE, 37210

10) DATPIFF.COM, LLC [MARCUS FRASIER](610)679-9134, 216 S. CENTRE AVE.
LEESPORT, PA, 19533

11) HIPSTER/BARONS MEDIA.COM°, [n                    74111 W. ALEMEDA
BURBANK, CA, 91505

12) REVERBNATION/eMINOR Inc.°, [JEAN CHRISTIAN MICHEL, ESQ] 115 DUKE STREET (Suite 2-A)
DURHAM, NC, 27701°, [DMCA AGENT] P.O. BOX 594, MORRISVILLE, NC, 27560

13) PLNVRIFFSTATION.COM/FENDER MUSIC INSTRUMENT°, [                        ]

(2)

1  17600 N. Perimeter Drive, Scottsdale, Az, 85255
2  *14)PLAYITHU3.COM/PLAYHU3.COM*: (CEO NAUMAN SAEED)+92.3038172577 FAISALABAD
3  ROAD, TARANWALA CITY, TAROWALA, 37250
4  15)YOUZEEK.COM*: [CTO JOSEPH BENGUIRA] 564 MARKET STREET, SUITE 700, SF, CA,
5  94104
6  *16)MTV.IT/VIACOM/TESTICANZONI MTV.IT*. [CEO-BOB BAKISH]
7  1515 Broadway 45th floor, NY, NY, 10036
8  *17)KANYETOTHE.COM/ROCNATION LLC. CEO. KANYE WEST-CEO S.CARTER] (310)867-7000
9  9348 CIVIC CENTER DRIVE, BEVERLY HILLS, CA, 90210
10 18)NIKMC.INFO/REDMOON LIMITED*.[                         ]AVLONOS]
11 MARIA HOUSE 1075 NICOSIA, CIPRUS
12 19) DAILYMOTTON/HT-REZ PRODUCTIONS,INC;(NATHANIEL BLAIR)(678)248-2969
13 3750 BROOKSIDE PARKWAY, ALPHARETTA, GA, 30022
14 *20)RAPDICT.ORG/WIKI MEDIA FOUNDATION, INC.*: (415)839-6885 [
15 1 MONTGOMERY STREET #1600   SAN FRANCISCO, CA 94104
16 *21)GYFCAT/GFYCAT.COM*: (DMCA AGENT-DAN MCELENEY)(780)237-5739
17 165 UNIVERSITY AVE.(suite *6) PALO ALTO, CA, 94301
18 22)NOOKL.COM*: [NORBERT KLEININGER] RENNERSTRASSE 13B
19 4614 MARCH TRENK, AUSTRIA
20 23)HOTNEWHIPHOP.COM/URBANLINKMEDIA*:[ DIANE EL HENRI BAURASSAYO](514)507-1800
21 (514)220-5255 MONTREAL, Q=CH4R2MG, CANADA
22 24)HDMZA.PW/CLOUDNS.NET*://                   ] ISKAR STR.4, SOFIA,
23 POSTAL CODE:1000, BG          (359)885238998
24 25)SCOOP.IT/TAVASCRIPT*: [DMCA AGENT GUILLAME DECUGIS](415)857-5869
25 575 MARKET STREET (11TH Floor) San Francisco, CA, 94105
26 *26)TWICSY.COM*.[                         ] 1920 L Street 100-259
27 WASH, DC, 20005
28 27) ASK.FM*. [                    ] VAT#IE3323023R4 6TH FLOOR

(3)

1  South Bankhouse Barrow street   DUBLIN 4, IRELAND
2  28) TMT / THE MONEY TEAM : [FLOYD MAYWEATHER]  4616 W. SAHARA AVE #238 LV, NV, 89012
3  29) ALL BUZZ PRODUCTIONS / CRIME LAB MUSIC GROUP : [PRESIDENT - ROB LOX]
4  42541 6TH STREET EAST-STE.G   LANCASTER, CA, 93535
5  30) APPLE / ITUNES : [DMCA AGENT SUE CARROLL] (408)974-9994
6  INFINITE LOOP MIS 3 TM, CUPERTINO, CA, 95014
7  31) [SLACKER.COM / SLACKER INC : [CEO-DUNCAN ORRELL JONES] (858)943-5000
8  16935 W. BERNARDO DRIVE. (SUITE 270) SAN DIEGO, CA, 92127
9  32) STEAM COMMUNITY.COM / VALVE CORPORATION : [ATTN DATA SUPPORT OFFICER COBALT FERRUM]  P.O. BOX
10  1688  BELLEVUE, WASH, 98009 ;  VALVE GMBH   RO'dINGS MARKET 9 D-20354
11  HAMBERG, GERMANY.
12
13
14  Ⅱ) BACKGROUND
15
16      In 2005 La'Monte Deshawn Sims Sr did register "Thugtorious
17  Gs" as sole proprietorship affiliate of A.S.C.A.P. Plaintiff had
18  previously been recording and performing under pseudonym
19  Active Chuck ss Entertainment CEO/Artist M3M(DUSEM$), and/or Desperado
20  Angelino.
21      In or about late 2012, plaintiff contacted ALLBUZZ PRODUCTION "Rob Lox",
22  (whom also serves as Crime Lab Music Group's CEO) scheduling a studio
23  recording session later that night. Plaintiff, and F u k Marion Jones
24  ("Fingaz"), did author, ⬛⬛⬛⬛⬛⬛ "Hit Up Bri nii." during that
25  recording session, to a beat containing inter ul tions of
26  Whoo kid-Woody's "Hit Up Ricky" beat... Plaintiff authorized "Rob Lox
27  to press (1) copy of the master recording ("Masters"), onto compact
28  disc, the plaintiff authorized "Rob Lox" to email a copy of "Hit Up

(4)

1 Brimin" to YardDownMuzik, Inc. President Wesley Chunk (GNUTT), a
2 record label plaintiff had often collaborated with.. The following
3 morning Wesley Crunk contacted plaintiff, verifying that he'd recieved
4 the email, and heard "Hit Up Brimin"... Wesley Crunk began inquiring
5 whether plaintiff would license the record to Yard Down Muzik, Inc
6 as a Work for hire, so that Yard Down Muzik could "remix",
7 the original rendition. Plaintiff gave a verbal agreement with the
8 following contingencies,
9    1) Yard Down Muzik, Inc. would accept full financial responsibil-
10 ities for videoshoot, and marketing plan, in relations to the
11 release of "Hit Up Brimin 2." (The remixed rendition)
12    2) Yard Down Muzik, Inc. would pay for the registration of
13 copyright, the I.S.R.C² codes, and would list Plaintiff as publisher
14 and copyright owner, and
15    3) Yard Down Muzik, Inc. would release G.NUtt featuring
16 Ty Dollas ign "Facedown" recording on YDM volume 1 album,
17 which would be a "club song," (targeting clubs and club goers)
18 and would presumably generate more attention to the album,
19 which would include "Hit Up Brimin 2", resulting in more electrical
20 transmissions to plaintiff's exclusive copyright.
21 Plaintiff alleges In sum, Yard Down Muzik, Inc. breached it's expressed
22 contract with plaintiff, where plaintiff was left footing the
23 bill for Film for the video, as well as the expenses in renting the
24 Hummer for video, (and gas expenses).. Yard Down Muzik, Inc.
25 breached the expressed agreement in failing to purchase the I.S.R.C
26 codes for the song and the video, identifying plaintiff as author
27 and copyright owner. Finally, Yard Down Muzik, Inc. breached expressed
28 agreement by failing to release "Facedown" recording on Y.D.M

Fn² International Standard) Recording Code

(5)

1   Volume 1 as agreed upon.

2   In 2016 D.G.A.F Records (whom plaintiff has no affiliation with,

3   and to the best of his recollection has never met with, nor communicated

4   with any agent or executive therein) did intentionally, without

5   authorization of copyright owner publish "Hit Yo Brimin 2",

6   (the remixed rendition) as part of Bang Dat volume 3 (Various artist).

7   Bang Dat volume 3 was a compilation of popular artist and

8   popular songs. In D.G.A.F's publication of plaintiff's exclusive

9   copyright defendant intentionally altered the content manage-

10   ment information (C.M.I) to exclude plaintiff's pseudonym,

11   as well as four other performer's names, to help conceal their

12   copyright infringement. Bang Dat volume 3 ~~was~~ compilation

13   was authorized to be ~~distributed~~ distributed on defendants:

14   Amazon.com; Spotify U.S.A, Inc; Spotify AB, INC.; EBay, Inc.;

15   Radionomy; Viacom; Slacker, Inc.; and Steam Community.com;

16   platforms.

17

18   IV) STATEMENT OF FACT

19

20   On March 7, 2016, plaintiff filed for registration of copyright, as

21   plaintiff has been incarcerated since 1/3/13 (several weeks after

22   the Hit Yo Brimin videoshoot) there was a delay in finding out additional

23   money was required for filing fee, thus September 9, 2016 is

24   the effective day of registration, being the date the copyright

25   office obtained all requirements for registration. (see exhibit A)

26   In 2016 Plaintiff registered "Hit Yo Brimin" under Thugtorious

27   G's/A.S.C.A.P, realizing defendant Lord Down Muzik, Inc. failed to

28   uphold it's expressed agreement to do so. (See exhibit B)

(6)

1. Despite the fact that "Hit Up Brimin" video has exceeded 1.1 million
2. views on YouTube alone, and millions of ~~electronic~~ electrical
3. transmissions internationally, sadly plaintiff who is the
4. author, performer, and actual copyright owner has recieved
5. no compensation for use of his "master", "performance", nor
6. "mechanical royalties"...
7.     Every defendant named in this complaint has published
8. plaintiff's exclusive copyright on it's service provider (see
9. exhibit C). Plaintiff did submit "Takedown" notice upon defendants
10. (see exhibit D), most of which complied, some defendants
11. defiantly continued to publish plaintiff's exclusive copyright.
12. Plaintiff LaMonte Deshawn Sims Sr. and Frank Marion Jones coauthored
13. Hit Up Brimin, first fixing and embodying the recording in a
14. tangible medium, thus any use of the "Master" ~~material~~ requires
15. authorization of the copyright owner. From this it is clear
16. plaintiff made some kind of agreement with defendant
17. Yard Down Muzik, Inc., whom published Hit Up Brimin video,
18. less than a month after plaintiff was incarcerated on unrelated
19. charges. From this defendant's publication of "Hit Up Brimin",
20. after failing to meet the contingencies agreed upon, left
21. plaintiff's exclusive copyright vulnerable to unauthorized
22. republication, and intentional copyright infringement. In
23. May 2016 D.G.A.F Records DJ Bang Dat did (with authorization
24. republish plaintiff's exclusive copyright as part of a
25. compilation entitled Bang Dat volume 3 (Various artist).
26.
27.          I) COMPLAINT FOR COPYRIGHT INFRINGEMENT AND UNFAIR
28.                    COMPETITION

(7)

1    In or around November 2012, the plaintiff authored and recorded
2  a works entitled "Hit Uo Brimin", with co-author Frank Marion Jones to
3  a beat containing interpolations of Whoo kid Woody's Hit Uo Ricky beat...
4  An original work of authorship is a work that is independently created by a
5  human author and possesses at least some minimal degree of creativity.
6  A work is "fixed" when it is captured (either by or under the authority of
7  an author) in a sufficiently permanent medium such that the work can be
8  percieved, reproduced, or communicated for more than a short time.
9  Copyright protection in the United States exists automatically from the moment
10  the original work of authorship is fixed.
11    Not only is plaintiff protected by copyright from the moment the original
12  work of authorship was fixed, plaintiff registered the works for
13  copyright. (see exhibit A). ~~████████████~~ Plaintiffs must
14  satisfy two requirements to present a prima facie case of
15  direct infringement". (1) they must show ownership of the
16  allegedly infringed material and (2) they must demonstrate
17  that the alleged infringers violate at least one exclusive right
18  granted to copyright holders under 17 U.S.C.S. §106.17
19  U.S.C.S. §501(a).
20    Since March 7, 2016 plaintiff has either published or licensed for publishing
21  all copies of the works in compliance with the copyright laws and has remained
22  the sole owner of the copyright. (See exhibit E)
23  1) After the plaintiffs publishing of the works, defendant "Amazon.com
24  Inc." authorized D.G.A.F Records and/or RTBang Dat's user account to publish
25  for distribution a compilation entitled "Bang Dat volume 3 (Various Artist)" for
26  $9.8 (See exhibit F) and may have profited more financially, as defendant
27  offered "Express Delivery Service". (See exhibit G). The Bang Dat volume 3
28  compilation includes plaintiffs exclusive copyright for sale (see exhibit H)

(8)

1 without the authorization of the copyright owner, and without license
2 resulting in intentional, direct copyright infringement. Defendant
3 failed to serve notice upon each and every person with an interest in
4 the recordings, within 30 days of publication onto it's service provider.
5 Additionally, defendant violated ▪▪ section 1202 (b)(3), by distributing,
6 importing for distribution, or public performing works, copies of works
7 or phonorecord knowing that copyright management information
8 has been removed, altered without the authorization of the copyright
9 owner or the law, knowing or with respects to civil remedies under section
10 1203, having reasonable grounds to know, that it will induce, enable, facilitate,
11 or conceal an infringement of any other right under this title.
12     Defendant had reasonable grounds to know that the C.M.I had been
13 altered, but overlooked these "red flags", where "Hit Up Brimin" was published
14 at the latest, 1/26/2013 by WordPour Muzikink Youtube user account, and the
15 C.M.I credited, "Fingaz", "M3M", "G.Nino", "TWRench", "NinoBrim", and "GNuff." Defendant
16 then approved republication of that same work, that same rendition on it's
17 server only crediting "Fingaz", despite the song containing six different
18 artist's rap voices, six different artists rap styles, and six different rap
19 verses. That is reasonable grounds to know that the C.M.I was incomplete, at the
20 least, what's more indicative is that "Hit Up Brimin" chorus was specifically
21 designed, to announce and/or introduce the artist before the beginning of the
22 performance of their rap verse. For instance the beat ignites the beginning of
23 the song, at some point which the chorus begins.", "I never hit my Rollin',
24 Bitch, I hit my Brimin, If niggas got a problem, on the set we can get it, I'm a
25 Fruit Town menace, The Duces with the business, the V.N's Yoo, and Fingaz
26 told you nigga's. Aye bitch Hit Up Brimin, Bitch hit up Brimin, Bitch Hit Up
27 Brimin, and all my niggas with it", then "Fingaz" begins his rap verse.
28 At the conclusion of Fingaz rap verse, the chorus repeats itself entirely, except

(9)

1  at the interval (That was previously underlined) introducing, "Fingaz told you
2  niggas," introduces, "Big M told you niggas," at which point "M3M (DuseM.$)"
3  begins his rap verse. This scheme repeats itself introducing each of the
4  6 rap artist in the chorus, right before their rap verse begins. It is with
5  the aforementioned evidence of fact that defendant published plaintiff's
6  exclusive copyright, in the U.S.A, U.K, INDIA, Mexico, and France although there
7  was reasonable grounds to know that the C.M.I to Hit Up Brimin had been
8  removed, altered, without the authority of the copyright owner or the law,
9  and had reasonable grounds to know that it will induce, enable, facilitate
10  or conceal infringement of any right under this title, this violated P&D rights.

   2) Spotify U.S.A, Inc.: Spotify AB, Inc.:

12    After the plaintiff's publishing of the works, defendant Spotify U.S.A, Inc.
13  authorized D.G.A.F Records and/or DJ Bang Dat's user account to publish for distribution
14  a compilation entitled, "Bang Dat volume 3 (Various Artist)" for ▮▮▮ streaming on it's
15  service provider. The Bang Dat volume 3 compilation includes plaintiff's exclusive
16  copyright, without authorization of the copyright owner, and without license
17  resulting in intentional direct copyright infringement. Defendant failed to
18  serve notice upon each and every person with an interest in the recordings,
19  within 30 days of publication onto it's service provider. Additionally, defendant
20  violated section 1202(b)(3), by distributing, importing for distribution, or
21  public performaning works, copies of works, or phonorecord knowing
22  that copyright management information has been removed, altered without
23  the authorization of the copyright owner or the law, knowing or with
24  respects to civil remedies under section 1203, having reasonable grounds
25  to know, that it will induce, enable, facilitate, or conceal an infringement
26  of any other right under this title.

27    Defendant had reasonable grounds to know that the C.M.I had been
28  altered, but overlooked these red flags, where "Hit Up Brimin" was initially

1   published (at the latest) 1/26/2013 by "Lord Dawn Muzik, Ink's" YouTube user account,
2   and the C.M.I. credits, "Fingaz," "M$M," "G Nino," "T.Wrench," "Nino Brim, and
3   "G.Nutt." Defendant thereafter approved republication of that same work,
4   on it's service provider which only credits, "Fingaz," despite the song
5   containing six different artist's rap voices, six different artist's rap styles
6   and six different rap verses.. that is reasonable grounds to know that the CMI
7   was incomplete, at the least, what's more indicative is that "Hit Yo Brimin" chorus
8   was specifically designed to announce and/or introduce the artist before the
9   beginning of the performance of their rap verse. for instance the beat ignites the
10   beginning of the song, which at some point the chorus begins. "I never hit my rollin,
11   Bitch I hit my Brimin, If nigga's got a problem, on the set we can get it, I'm a Fruit
12   Town menace, the Puses with the business, The VN's too, and Fingaz told you niggas."
13   Then Fingaz. begins his rap verse, at the conclusion of which the chorus repeats
14   itself entirely except at the interval (that was previously underlined) introducing Fingaz
15   is switched introducing "Big M told you nigga's," at which point "M$M (Puse M-$)
16   begins his rap verse. This scheme repeats itself introducing each of the 6
17   rap artists in the chorus, right before their rap verse begins.
18        It is with the aforementioned facts that the defendant published
19   plaintiffs exclusive copyright in the U.S.A., and Sweeden, although there was
20   reasonable grounds to know that the C.M.I to Hit Yo Brimin had been removed
21   altered, without the authority of the copyright owner or the law, and
22   had reasonable grounds to know that it will Induce, enable, facilitate, or
23   conceal infringement of any right under this title, violating plaintiffs P&D rights..
24        3) E Bay, Inc. :
25        After plaintiffs publication of the works, defendant's E Bay, Inc.,
26   authorized R.G.A.F Records and/or DJ Bang Pat's user account to publish for
27   distribution a compilation entitled "Bang Dat volume 3 (various artist)," The
28   Bang Dat volume 3 compilation includes plaintiffs exclusive copyright for sale

(11)

1  without the authorization of the copyright owner, and without license resulting in
2  intentional direct copyright infringement. Defendant failed to serve notice upon
3  each and every person with an interest in the recordings, within 30 days of
4  publication onto it's service provider. Additionally, defendant violated section 120
5  (b)(3), by distributing, importing for distribution, or public performing works, copies
6  of works, or phonorecord knowing that copyright management information has
7  been removed, altered without the authorization of the copyright owner or the
8  law, knowing or with respects to civil remedies under section 1203, having reasonable
9  grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any
10 other right under this title.

11      Defendant had reasonable grounds to know that the C.M.I had been altered or
12 removed, but overlooked these redflags, when "Hit Lo Brimin" was published at the latest,
13 1/26/2013 by YardDownMuzikink YouTube user account, and the C.M.I credited, "fingaz",
14 "M3M", "GNiNo", "TWRENCH", "NinoBrim, and "GNutt". Defendant then approved republication
15 of that same work, that same rendition, on it's service provider, only crediting "finga
16 despite the song containing six different artist's rap voices, six different rap style
17 and six different rap verses. That is reasonable grounds to know that the C.M.I was
18 incomplete, in the least, but what's more indicative is that, "Hit Lo Brimin" chorus was
19 specifically designed to announce/introduce the next artist before the beginning of the
20 performance of their rap verse.

21      for instance the beat ignites the beginning of the song, at some point, where the
22 chorus begins, "I never Hit my Rollin, Bitch, I hit my Brimin, If niggas got a problem, on the
23 set we can get it, Ima Fruit Town menace, the Luses with the business, the V.N's too,
24 and fingaz told you nigga's", then "fingaz" begins his rap verse. At the conclusion of "fingaz"
25 rap verse, the chorus repeats itself entirely except at the interval (That was
26 previously underlined) introducing, "fingaz told you nigga's", switches to
27 introduce, "Big M told you nigga's" at which point "M3M (Luse M$)", begins his
28 rap verse. This scheme repeats itself introducing each of the six rap artist

1  in the chorus, right before their rap verse begins. It is with the aforementioned
2  evidence of the facts, that defendant published plaintiff's exclusive copyright,
3  although there was reasonable grounds to know that the C.M.I to "Hit Up Brimin"
4  had been removed, altered, without the authority of the copyright owner or the
5  law, and had reasonable grounds to know that it will induce, enable, facilitate,
6  or conceal infringement of any right under this title, violating plaintiff's P&D right

7       4) Radionomy
8           After the plaintiff's publication of the works, defendant Radionomy
9  authorized P.G.A.F Records, and/or RJBang Pat's ~~word~~ user account to publish for
10 distribution a compilation entitled "Bang Dat volume 3 (Various Artist)," on it's
11 service provider. The Bang Dat volume 3 compilation includes plaintiff's exclusive
12 copyright without authorization of the copyright owner, and without license
13 resulting in intentional direct copyright infringement. Defendant failed to
14 ~~requires~~ serve notice upon each and every person with an interest in the
15 recordings, within 30 days of publication on it's service provider.
16          Additionally, defendant violated section 1202(b)(3), by distributing,
17 importing for distribution, or public performing works, copies of works
18 or phonorecord knowing that copyright management information has been
19 removed, altered without the authorization of the copyright owner or the law,
20 knowing or with respects to civil remedies under section 1203, having
21 reasonable grounds to know, that it will induce, enable, facilitate, or conceal
22 an infringement of any other right under this title.
23          Defendant had reasonable grounds to know that the C.M.I. had been
24 altered, but overlooked these redflags, when "Hit Up Brimin", was initially published
25 (at the latest), 1/26/2013 by "Lord Down Muzik Ink' You Tube user account," and
26 the C.M.I credits "Fingaz," "M3M," "GNino," "TWrench," "NinoBrim, and "GNutt,"
27 Defendant thereafter approved republication of that same work, on it's service
28 provider, which only credits "Fingaz", despite the song containing six

(13)

1  voices, six different artists rap styles, and six different rap verses. That is
2  reasonable grounds to know that the C.M.I was incomplete, at the least,
3  what's more indicative is that, "Hit Up Brimin chorus was specifically designed
4  to announce and/or introduce the artist before the beginning of the performance
5  of their rap verse. For instance the beat ignites the beginning of the song,
6  which at some point the chorus begins, "I never Hit my Ruttin, Bitch I hit
7  my Brimin, If nigga's got a problem, on the set we can get it, I'm a Fruit Town
8  menace, the Puses with the business, the VN's too, and Fingaz told you niggas".
9  Then "Fingaz" begins his rap verse, at the conclusion of which the chorus repeat
10 itself entirely except at the interval (that was previously underlined) intro-
11 ducing "Fingaz", is switched introducing, "Big M told you nigga's", at which
12 point "M$M (Puse M$)" begins his rap verse. This scheme repeats itself
13 introducing each of the 6 rap artists in the chorus, right before their rap
14 verse begins.
15       It is with the aforementioned facts that the defendant published
16 plaintiff's exclusive copyright, although there was reasonable grounds to know
17 that the C.M.I to, "Hit Up Brimin" had been removed, altered without the copyright
18 owner or the law, and had reasonable grounds to know that it will induce, enable
19 facilitate, or conceal infringement of any right under this title.. Article 12 of
20 the Wipo Copyright treaty provides in relevant part:
21       Contracting parties shall provide adequate and effective legal remedie
22       against ~~those~~ any person who knowingly perform any of the following
23       acts knowing, or with respects to civil remedies having reasonable
24       grounds to know, that it will induce, enable, facilitate or conceal
25       an infringement of any right covered by this Treaty or the Berne
26       Convention:
27           (i) to remove or alter any electronic rights management
28 information without authority:

(14)

1    (ii) to distribute, import for distribution, broadcast, or
2  communicate to the public, without authority, works or copies of
3  works knowing that electric rights management information has
4  been removed or altered without authority.
5          Also, Article 19 of the WPPT contains identicle language;
6             New section 1202 is the provision implementing this obligation
7             to protect the integrity of copyright management
8             information.
9  This violated plaintiff's production and display rights & distribution rights
10     (5) YardDownMuzik, Inc.
11          Plaintiff and defendant made an agreement in which defendant
12  would ▓▓ recieve license to use "master" of "Hit Uo Brimin". To be
13  specific, YardDownMuzik, Inc. (Y.D.M) wanted to "remix" plaintiff's
14  original rendition, and would promote "Hit Uo Brimin 2" (the
15  remix rendition) as the "street banger" single, (targeting a more
16  rogue demographic) for Y.D.M volume 1. In an expressed verbal
17  agreement defendant agreed:
18   1. Y.D.M would accept full financial responsibilities for the video
19  for "Hit Uo Brimin" remix, as well as marketing budget, in
20  relations to the release of "Hit Uo Brimin 2".
21    2. Y.D.M would pay for the registration of copyright, the I.S.R.C
22  codes, and would list "Thugtorious Gs/ASCAP as publisher, and
23  Active Chuckos Ent. as copyright owner, and
24    3. Y.D.M would release GNutt featuring TyDollaSign (Atlantic
25  recording platinum selling artist) "Facedown", recording on
26  Y.D.M volume one, which would be a "club banger" (target market-
27  ing clubs and club goers) which would presumably generate
28  more attention to the Y.D.M album, resulting in more electrical

1  transmissions to plaintiff's exclusive copyright, (I.E. increased
2  capital gain)
3      I.P.M breached it's agreement where plaintiff, (who in addition to
4  expenses for clothing for video) renting a Hummer for video, gas for the
5  Hummer) was ~~asked~~ left footing the bill on film for the video, after
6  two production teams "All Buzz Productions," and "Kandy Man Productions"
7  ran out of film, and I.P.M president maintained he didn't have the
8  funds at the time.. As plaintiff was already heavily invested financially,
9  and expected he'd recieve compensation from defendant, he didn't
10 deem this breach in isolation' substantial enough to sever
11 ties with I.P.M., but ~~anyway~~ days later plaintiff was arrested
12 on unrelated felony charges, facing 23 years, but ultimately
13 sentenced to state prison for 8 years.
14      Within 30 days of plaintiff being arrested defendant
15 released "Hit Yo Brimin 2" (the remixed rendition) as thee official
16 Hit Yo Brimin video, on Yard Pawn Muzik Ink You Tube channel.. As this was
17 not part of the agreement, plaintiff never authorized defendant
18 to alter title, or other information identifying the work. Hit Yo Brimin
19 only has two authors, frank Marion Jones and LaMonte Deshawn
20 Sims sr., that is the original rendition, the version defendant
21 published is "Hit Yo Brimin 2" (see exhibit I) which the MP3 file
22 attest to, as neither "GNutt," "TWrench," "G.Nino," nor NinaBrim, were
23 present when the work was first fixed and embodied in a
24 tangible medium.. The video released by defendant should
25 be properly titled "Hit Yo Brimin 2" or "Hit Yo Brimin Remix..
26 Defendant breached expressed agreement in failing to protect
27 plaintiff's exclusive copyright, by failing to file registration
28 of copyright with the plaintiff's information, prior to public-

(16)

1  ation of the work, and in failing to purchase I.S.R.C codes, to
2  encode the video, as well as any other publication of the recording
3  with plaintiff's publishing company," Thugtorious Gs," as registered
4  and affiliated with A.S.C.A.P.:

5      As evident in (exhibit I) Defendant published I.P.M volume 1 with
6  plaintiff's exclusive copyright, but failed to include GNutt featuring
7  Ty Dollasign, "Facedown," one of the contingencies to 'recieve license
8  te "remix," "Hit Yo Brimin." The defendant's failure to meet the
9  contingencies' listed above had a cumulative effect in
10 nullifying the agreement, in which licensed Y.P.M to remix plaintiff's
11 exclusive copyright. Without a license, coupled with the fact that
12 defendant altered the C.M.I titling the video Hit Yo Brimin, instead
13 of "Hit Yo Brimin 2" or "Remix," resulted in direct copyright
14 infringement. Thus, any use of plaintiff's exclusive copyright by
15 defendant should be deemed unauthorized, and a direct infringement
16 of plaintiff's exclusive copyright.. All of this amounted to violation of
17 plaintiff's "Display" rights, and production and display rights.
18      6) YouTube/Google, Inc..
19      On 1/26/13 defendant approved Yard Pown Muzik, Inc., to publish
20 "Hit Yo Brimin remix" video under false pretense, titling it
21 "Hit Yo Brimin official video".. That is a misrepresentation of the facts,
22 as plaintiff is the co-author, along with Frank Marion Jones, as well
23 as performer, and actual copyright owner. Even though defendant
24 Yard Down Muzik, Inc published plaintiff's exclusive copyright
25 under false pretense, defendant YouTube/Google, Inc. never
26 served notice on every person with an interest in the recording.
27 The video list plaintiff as performer, and where defendant
28 did and continues to recieve a financial benefit directly attribut-

1  able to the infringing activity, defendant failed to secure a license,
2  by "serving notice" after publishing the works, and failing to
3  compensate plaintiff for "performance", "mechanical" royalties
4  earned, as well as the use of plaintiff's masters."
5       In such failure defendants publication resulted in
6  direct copyright infringement, violating plaintiff's exclusive rights
7  to display, and exclusive rights to reproduction and distribution.
8       (7) D.G.A.F Records - RJ Bang Dat
9       Defendant intentionally and willfully, and for purposes of
10 commercial advantage or private financial gain, did publish
11 "Hit Up Brimin" as part of Bang Dat volume 3 (various artist),
12 without authorization of the copyright owner resulting in direct
13 copyright infringement. Bang Dat volume 3 (various artist) was published
14 for sale internationally on the defendant's platform: Amazon.com,
15 Spotify U.S.A, Inc., Spotify AB, Inc., EBay, Inc., Slacker, Inc., Steamcommunity.com,
16 Testicanzoni MTV. IT, VIACOM; and others that are not yet defendants named
17 in this complaint.
18       Additionally, defendant violated section 1202(b)(3) by distributing,
19 importing for distribution, or public performing, works, copies of
20 works, or phonorecord knowing that copyright management
21 information has been removed, altered without the authorization
22 of the copyright owner or the law, knowing or with respects to
23 civil remedies under section 1203, having reasonable grounds to know,
24 that it will induce, enable, facilitate, or conceal an infringement of any
25 other right under this title.
26       Plaintiff does not know any executive, agent, or other representative
27 of DGAF records, so defendant either obtained a copy from
28 Crimelab Music Group studios, All Buzz Productions, (where plaintiff

(18)

1  recorded "Hit Yo Brimin", (and one of the production teams editing video) or
2  from Yard Down Muzik, Inc., (directly or through a service provider already
3  providing electrical transmission). In either case, defendant necess-
4  arily was familiar with the song, and artists on the song, and
5  thought so highly of the song that they included it on a compilation
6  with already established artist including, but not limited to:
7  (Atlantic Records) "Ty Dollasign", (Def Jam Records) "LG", (Geffen Records) "The Game"
8  (Interscope Records) "Nipsey Hussle", and "RJ", all of which are "platinum",
9  artist (except Nipsey Hussle & RJ). Defendant had reasonable grounds
10  to know that the C.M.I had been altered, because they altered it,
11  removing plaintiff's name as author and/or performer, as well as
12  "GNino", "Wrench", "Nino Brim", and "G Nutt", all artists performing on that
13  remixed rendition! Defendants familiarity with the record means
14  defendant heard the song's chorus, introduce 6 different artists, before
15  their performance of their rap verse, then the defendant heard
16  6 different rap styles, in 6 different voices. The defendant still
17  intentionally removed every artist's pseudonym from C.M.I,
18  except "Fingaz", then published the plaintiff's exclusive copyright,
19  internationally, willfully, and for purposes of commercial advantage
20  or private financial gain. This all violated plaintiff's exclusive right to
21  production and Distribution, display rights,
22      8) Sound Cloud Limited.
23      Defendant approved multiple people's user accounts to
24  publish plaintiffs exclusive copyright, for distribution on it's
25  service provider, which specializes in Electrical Transmission
26  of sound recordings, more particularly music. (See exhibit J )
27  Defendant never served notice upon every person with an
28  interest in the recording, as required for a license. Without a

1  license defendant's unauthorized distribution of plaintiff's exclusive
2  copyright results in direct infringement. Plaintiff didn't find his
3  publishing company credited, nor his performance pseudonym
4  'M3M (DuseIM$)', on none of the publications on defendant's platform
5  This all violated plaintiff's exclusive rights to Production & Distribute.
6              (9) Hulkshore, Limited:
7         Defendant approved  Yard Down Muzik, Inc. user accounts
8  publication of plaintiff's exclusive copyright onto it's service
9  provider, without serving notice upon every person with
10 an interest in the recording within (30) days of publishing
11 works for electrical transmission on it's service provider.
12 As this is necessary to obtain a license, defendant's
13 publication was without license, and without authorization
14 of the copyright owner, resulting in direct copyright
15 infringement. Plaintiff doesn't recall seeing his publishing
16 company credited, nor his performance pseudonym in the
17 C.M.I of the aforementioned publication. As defendant's
18 service provider has advertisement plastered all over it,
19 it appears defendant's publication was for purposes of
20 commercial advantage or private financial gain. This violates plaintiff
21 exclusive right to Production & Distribute (P&D)
22              (10) Datpiff.com, LLC:
23         Defendant approved Yard Down Muzik, Inc. unauthorized distribution
24 of plaintiffs exclusive copyright, as part of Y.D.M volume 1 # RNS onto
25 it's digital service provider. Defendant failed to serve notice upon
26 every person with an interest in the recording, within (30) day
27 of publishing works for electrical transmission on it's service
28 provider, as necessary to obtain a license. Thus defendants

(20)

1    unauthorized publication onto it's service provider without a license
2    resulted in direct copyright infringement. As defendant sales
3    promotion and advertisement on it's service provider the defendant
4    publication of plaintiff's exclusive copyright was for purposes of
5    commercial advantage or private financial gain..
6       Although defendant was the only provider who published
7    "Hit Yo Brimin 2" under it's proper title, nowhere does defend-
8    ants publication credit M&M(Duse M$) as author or performer,
9    neither does it name Thugtorious Gs nor ActiveChuckes the
10   copyright owner of "Hit Yo Brimin." In fact although plaintiff
11   enrolled DMCA@ Datpiff.com, a "takedown notice" similar to
12   the same one, every defendant named in this complaint (whom
13   recieve takedown notices) complied with, this defendant failed
14   to comply. (See exhibit K    ) This violates plaintiff's P&D rights.
15
16      11) Hypster/Baronsmedia.com :
17       Defendant approved an unknown user-account publication of
18   plaintiff's exclusive copyright onto it's service provider, without serving
19   notice upon every person with an interest in the recording within
20   (30) days of publishing works for electrical transmission on it's service
21   provider. As this is necessary to obtain a license, defendant's publication
22   was without license, and without authorization of the copyright owner,
23   resulting in direct copyright infringement. Plaintiff doesn't recall
24   seeing his publishing company credited in the C.M.I, nor was plaintiff
25   performance pseudonym credited in the aforementioned publication.
26   It appears defendant's publication was for purposes of commercial
27   advantage or private financial gain. This violates plaintiff's exclusive
28   rights to production and distribution. (P&D).

12) Reverbnation/eMinor, Inc. :

Defendant approved an unknown user account's publication of plaintiff's exclusive copyright onto it's service provider, without serving notice upon every person with an interest in the recording within (30) days of publishing works for electrical transmission on it's service provider. As this is necessary to obtain a license, defendant's publication was without license, and without authorization of the copyright owner, resulting in direct copyright infringement. Plaintiff didn't find his publishing company, nor his performing pseudonym credited in the C.M.I, ~~████████████~~ in the aforementioned publication of his exclusive copyright. This is in violation of plaintiff's exclusive right to Production & Distribution. It appears defendant's distribution was for purposes of commercial advantage or private financial gain.

13) PlayRiffstation.com/Fender Music Instrument :

Defendant approved an unknown users account's publication of plaintiff's exclusive copyright onto it's service provider, without serving notice upon every person with an interest in the recording, within (30) days of publishing works for electrical transmission on it's service provider. As this is necessary to obtain a license, defendant's publication was without license, and without authorization of the copyright owner, resulting in direct copyright infringement. Plaintiff didn't find his publishing company, nor his performing pseudonym credited, in the C.M.I, in the aforementioned publication of his exclusive copyright. This is in violation of plaintiff's exclusive right to production & Distribution. It appears defendant's distribution was for purpose of commercial advantage or private financial gain.

`14)Playthub.com/Playhub.com°.`

1
2     Defendant approved an unknown user account's publication of
3 plaintiff's exclusive copyright onto it's service provider, without serving
4 notice upon every person with an interest in the recording within (30)
5 days of publishing works for electrical transmission on it's service
6 provider. As this is necessary to obtain a license, defendant's publication
7 was without license, and without authorization of the copyright owner,
8 resulting in direct copyright infringement. Plaintiff didn't find his publishing
9 company, nor his performing pseudonym credited in the C.M.I, in the
10 aforementioned publication of his exclusive copyright. This is in violation
11 of plaintiff's exclusive right "to production & distribution", and/or "display
12 rights." It appears defendant's distribution was for purposes of
13 commercial advantage or private financial gain.
14
15          `15)YouZeek.com°.`
16     Defendant approved an unknown user account's publication of
17 plaintiff's exclusive copyright onto it's service provider, without serving
18 notice upon every person with an interest in the recording, within (30) days
19 of publishing works for electrical transmission on it's service provider. As
20 this is necessary to obtain a license, defendant's publication was with-
21 out license, and without authorization of the copyright owner, resulting
22 in direct copyright infringement. Plaintiff didn't find his publishing
23 company, nor his performing pseudonym credited, in the C.M.I, in the
24 aforementioned publication, of his exclusive copyright. This is in
25 violation of plaintiff's exclusive right to "production & distribution",
26 and/or "display rights.". It appears defendant's distribution was
27 for purposes of commercial advantage or private financial
28 gain..

16) MTV.IT-VIACOM-TESTICANZONI MTV.IT:

2   Defendant approved an unknown user account's publication of
3   plaintiff's exclusive copyright onto it's service provider, without serving
4   notice upon every person with an interest in the recording within (30)
5   days of publishing works for electrical transmission on it's service
6   provider. As this is necessary to obtain a license, defendant's publication
7   was without license, and without authorization of the copyright owner
8   resulting in direct copyright infringement. Plaintiff didn't find his publish
9   ing company, nor his performing pseudonym credited in the C.M.I., in
10  the aforementioned publication of his exclusive copyright. This is in
11  violation of plaintiff's exclusive right to "production & distribution," and/o
12  "display rights." It appears defendant's distribution was for purposes of
13  commercial advantage or private financial gain.,

14

15  17) Konprtothecom-RocNation LLC

16  Defendant approved an unknown user account's publication of
17  plaintiff's exclusive copyright onto it's service provider, without serving
18  notice upon every person interest in the recording within (30) days of
19  publishing works for electrical transmission on it's service provider
20  As this is necessary to obtain a license, defendant's publication was
21  without license, and without authorization of the copyright owner,
22  resulting in direct copyright infringement. Plaintiff didn't find his
23  publishing company, nor his performing pseudonym credited,
24  in the publication on defendant's website. As most websites are
25  pay per click advertising, it appears the defendant's use of
26  plaintiff's exclusive copyright was for purposes of commercial
27  advantage or private financial gain. This is in violation of plaintiff's
28  exclusive rights to "display".,

(24)

(18) NIKMC INFO/REDMOON LIMITED:

Defendant approved an unknown user account's publication of plaintiff's exclusive copyright onto it's service provider, without serving notice upon every person with an interest in recording within (30) days of publishing works for electrical transmission on it's service provider. As this is necessary to obtain a license, defendant's publication was without license, and without authorization of the copyright owner, resulting in direct copyright infringement. Plaintiff didn't find his publishing company, nor his performing pseudonym credited in the C.M.I, in the aforementioned publication of his exclusive copyright. This is in violation of plaintiff's exclusive right to "production & distribution", and/or "display rights." It appears defendant's distribution was for purposes of commercial advantage or private financial gain.

(19) DALI, Motion/Hi-Rez productions, Inc. :

Defendant approved an unknown user account's publication of plaintiff's exclusive copyright onto it's service provider, without serving notice upon every person with an interest in recording within (30) days of publishing works for electrical transmission on it's service provider.. As this is necessary to obtain a license, defendant's publication was without license, and without authorization of the copyright owner, resulting in direct copyright infringement. Plaintiff didn't find his publishing company, nor his performing pseudonym credited in the C.M.I, in the aforementioned publication of his exclusive copyright. This is in violation of plaintiff's exclusive right to "production & distribution", and/or "display rights." It appears defendants distribution was for purposes of commercial advantage or private financial gain.

20) RapDict.org - Wiki Media Foundation, Inc.

Defendant approved the publication of plaintiff's exclusive copyright onto it's service provider, yet failed to serve notice upon every person with an interest in the recording within (30) days of publishing works for electrical transmission on it's service provider. As this is necessary to obtain a license, defendant's publication was without license, and without authorization of the copyright owner, resulting in direct copyright infringement.. This is in violation of plaintiff's exclusive right to "production & distribution", and/or "display rights". It appears that defendant's distribution was for purposes of commercial advantage or private financial gain..

21) GIFCAT/GFYCAT.COM:

Defendant approved an unknown user-account's publication of plaintiff's exclusive copyright onto it's service provider, without serving notice upon every person interest in the recording within (30) days of publishing works for electrical transmission on it's service provider. As this is necessary to obtain a license, defendant's publication was without license, and without authorization of the copyright owner, resulting in direct copyright infringement. Plaintiff didn't find his publishing company, ▓▓▓▓▓▓▓▓▓▓▓ credited in the C.M.I, in the aforementioned publication, of his exclusive copyright. This is in violation of plaintiff's exclusive right to, "production & distribution", and/or "display rights". It appears defendant's distribution was for purposes of commercial advantage or private financial gain..

(26)

22) NOOKI.COM

Defendant approved an unknown user account's publication of plaintiff's exclusive copyright, onto it's service provider, without serving notice upon every person with an interest in the recording, within (30) days of publishing works for electrical transmission on it's service provider. As this is necessary to qualify for a license, defendant's publication was without license, and without authorization of the copy-right owner, resulting in direct copyright infringement. Plaintiff didn't find his publishing company, credited in the C.M.I, and/or his rap pseudonym, in the aforementioned publication of his exclusive copyright. This is in violation of plaintiff's exclusive rights to, "production and distribution, and/or display" rights. It appears defendant's distribution was for purposes of commercial advantage or private financial gain.

23) HotNewHipHop.com-Urban Link Media.

Defendant authorized "Yard Down Muzik, Inc., user account's publication of plaintiff's exclusive copyright, onto it's service provider without serving notice upon every person with an interest in the recording within (30) days of publishing works for electrical transmission on it's service provider. As this is necessary to qualify for a license, defendant publication was without license, and without authorization of the copyright owner, resulting in direct copyright infringement. Plaintiff didn't find his publishing company credited, in the C.M.I, nor did he find his performance pseudonym, in the aforementioned public-ation, of his exclusive copyright. This violated plaintiff's exclusive rights to, "production and distribution." It appears distribution of plaintiff's copyright was for purposes of commercial advantage or private financial gain..

(27)

24) HDMAZA.PW-CLOUDNS.NET:

Defendant approved an unknown user's account's publication of plaintiff's exclusive copyright onto it's service provider, without serving notice upon every person with an interest in the recording within (30) days of publishing works for electrical transmission on it's service provider. As this is necessary to qualify for a license, defendant's publication was without license, and without authorization of the copyright owner, resulting in direct copyright infringement. Plaintiff didn't find his publishing company, and/or his performance pseudony in the aforementioned publication of his exclusive copyright. This violated plaintiff's exclusive rights to "production & distribution" and/or "display rights". It appears defendant's distribution of plaintiff's exclusive copyright was for purposes of commercial advantage or private financial gain.

25) SCOOP.IT-Javascript:

Defendant approved an unknown user's account's publication of plaintiff's exclusive copyright onto it's service provider, without serving notice upon every person with an interest in the recording within (30) days of publishing works, for electrical transmission on it's service provider. As this is necessary to qualify for a license, defendant's publication was without license, and without authorization of the copyright owner, resulting in direct copyright infringement. Plaintiff didn't find his publishing company and/or his performance pseudony in the aforementioned publication of his exclusive copyright. This violated plaintiff's exclusive right to "production & distribution," and/or "display rights". It appears defendant's distribution of plaintiff's works was for purposes of commercial advantage or private financial gain.

(28)

26) TINT.CSV.COM:

Defendant approved on unknown user's account's publication of plaintiffs exclusive copyright, onto it's server, without serving notice on every person with an interest in the recording, within (30) days of publishing the works, for electrical transmission on it's service provider. As this is necessary to qualify for a license, defendant's publication was without license, and without authorization of the copyright owner, resulting in direct copyright infringement. Plaintiff didn't find his publishing company and/or his performance pseudonym in the aforementioned publication of his works. This violated plaintiffs exclusive rights to "production & distribution" and "display rights". It appears defendant's distribution of plaintiff's exclusive copyright was for purposes of commercial advantage or private financial gain.

27) ASK.FM:

Defendant approved on unknown user's account's publication of plaintiff exclusive copyright, onto it's server, without serving notice on every person with an interest in the recording, within (30) days of publishing the works for electrical transmission on it's service provider. As this is necessary to qualify for a license, defendant's publication was without license, and without authorization of the copyright owner, resulting in direct copyright infringement. Plaintiff didn't find his publishing company, and/or his performance pseudonym in the aforementioned publication of his works. This violated plaintiff's exclusive rights to "production & distribution", and "display rights". It appears defendant's distribution of plaintiff's exclusive copyright was for purposes of commercial advantage, or private financial gain.

28) TMT/THE MONEY TEAM Floyd Mayweather.

Defendant authorized Yard Down Muzik, Inc. to publish Y.D.M volume 1 #RNS in collaboration with it's brand. (see exhibit L) The defendant and defendant Yard Down Muzik collaborated and released Y.D.M volume 1 # R.N.S through multiple digital service providers which included plaintiff's exclusive copyright, yet nowhere did the C.M.I include plaintiff's publishing company, and excluded plaintiff's pseudonym (M3M or DUSE M'$)., Defendant violated section 1202(b)(3), by distributing, importing for distribution, or public performing works, copies of works, or phonorecord knowing that copyright management information has been removed, altered, without the authorization of the copyright owner or the law, knowing or with respects to civil remedies under section 1203, having reasonable groun- to know, that it will induce, enable, facilitate, or conceal an infringement of any other right under this title. The defendant had reasonable grounds to know that C.M.I had been altered or removed from "Hit Up Brimin," as previously mentioned in this complaint, the chorus was designed to introduce the artist right before he performs his rap verse.

The defendant's collaboration with Yard Down Muzik, Inc., publishing plaintiff exclusive copyright without authorization, removing plaintiff's performance pseudonym, violates plaintiff's exclusive right to "production & distribute," and/or display rights. Defendant's unlawful distribution of plaintiffs exclusive copyright was for purposes of commercial advantage or privat- financial gain.

(29) All Buzz Productions - Crime Lab Music Group.

Defendant owns the home studio in which plaintiff and Frank Marion Jones First Fixed and embodied "Hit Up Brimin"

(30)

1   in a tangible medium. Additionally, defendant was one of the
2   videographers getting video footage, as well as one of the
3   editors, whom assembled the footage into what is published
4   today as "Hit Yo Brimin" official video. Thus, it was defendant
5   who knew plaintiff, and Frank Marion Jones authored
6   "Hit Yo Brimin," their verses and the chorus. Defendant still
7   titled, "Hit Yo Brimin 2" (the remixed rendition of plaintiffs
8   original copyright) "Hit Yo Brimin" official video, altering the
9   C.M.I to misrepresent whom the authors are, in coordination
10  with Lord Down Muzik, Inc's desire to take advantage of the
11  plaintiff, whom is incarcerated, and represent the works, not as
12  a remixed rendition, of plaintiffs copyright, but as the original
13  rendition. This was in violation of section 1202(b)(3), by distributing,
14  importing for distribution, or public performing works; copies of
15  works or phonorecords knowing that copyright management
16  information has been removed, altered, without the authorization
17  of the copyright owner or the law, knowing or with respects to civil
18  remedies under section 1203, having reasonable grounds to know, that
19  it will induce, enable, facilitate, or conceal infringement of any other right
20  under this title.
21      This violated plaintiffs exclusive right to "production& distribution,"
22  and "display" rights. Defendant's unlawful distribution of plaintiffs
23  exclusive copyright was for purposes of commercial advantage or
24  private financial gain..
25
26      (30) APPLE-ITUNES
27      Defendant authorized D.G.A.F. Records and/or DJ Bang Pat's user account
28  to publish for Electrical Transmission, a compilation entitled "Bang Pat

1   Volume 3 (Various Artist), which included plaintiff's exclusive copyright,
2   "Hit Up Brimin". This was published without the authorization of
3   the copyright owner, and the defendant failed to serve notice upon each
4   and every person with an interest in the recording within (30) days
5   of publication of the works. As this is a requirement ~~to~~ to obtain
6   license, defendant's ~~own~~ publication of plaintiff's exclusive copyright
7   was without license, resulting in direct copyright infringement.
8        Bang Dat volume 3 (Various Artist) altered C.M.I (as it removed
9   plaintiff's performance pseudonym) in it's publication by D.G.A.F
10  Records. (whom are defendants in this complaint) which ~~~~
11  violated section 1202(b)(3), by distributing, importing for distribution,
12  or public performing works, copies of works, or phonorecord knowing
13  that copyright management information has been removed, altered
14  without the authorization of the copyright owner or the law, knowing
15  or with respects to civil remedies under 1203, having reasonable grounds
16  to know, that it will induce, enable, facilitate, or conceal an infringement
17  of any other right under this title.
18       Defendant had reasonable grounds to know that the C.M.I
19  had been altered or removed, when the songs chorus introduces every
20  performer by name, right before their rap verse, additionally the
21  video was published on YouTube 1/26/13. "This publication violated
22  plaintiffs exclusive right to production & distribution". Defendant's
23  illegal publication of plaintiffs copyright was for purposes of
24  commercial advantage or private financial gain..
25            3D SLACKER, Inc
26       Defendant approved D.G.A.F Records unauthorized publication
27  of plaintiffs exclusive copyright "Hit Up Brimin", as part of
28  Bang Dat volume 3 (Various artist). The publication was with altered

(32)

1  C.M.I, that removed plaintiff's performance pseudonym, and
2  nowhere does this publishing include plaintiffs' publishing
3  company. This unauthorized publication violated plaintiff's
4  exclusive rights to production & distribution." Defendant failed to
5  serve notice within (30) day of publication as necessary to
6  obtain license. Defendant's publication of plaintiff's exclusive
7  copyright was for purposes of commercial advantage or
8  private financial gain.
9
10      32) STEAMCOMMUNITY.COM - VALVE CORPORATION:
11      Defendant approved D.G.A.F Records unauthorized publication
12  of plaintiff's exclusive copyright, "Hit 1/0 Brimin", as part of
13  Bang Dat volume 3 (Various Artist). This compilation was published
14  with altered C.M.I, that removed plaintiff's performance
15  pseudonym, and nowhere does this publication include plaintiffs'
16  publishing company. This unauthorized publication violated
17  plaintiffs' exclusive rights to "production & distribution".
18  Defendant failed to serve notice within (30) days of publication
19  onto it's service provider as necessary to obtain license.
20  Defendant's publication of plaintiff's exclusive copyright
21  was for purposes of commercial advantage or private
22  financial gain..
23
24
25
26
27
28

(33)

ARGUMENT

1. Prior to ~~March~~ Jan 26, 2013, plaintiff, who then was and ever since has been a citizen of the United States, created and wrote an original ~~dramatic/musical~~ song entitled "Hit Up Brimin."

2. This song contains a large amount of material wholly original with plaintiff and is copyrighted subject matter under the laws of the United States.

3. Between March 7, 2016 and September 9, 2016 plaintiff complied in all respects with the copyright Act, and all other laws governing copyright, and secured the exclusive rights and privileges in and to the copyright of "Hit Up Brimin", music, words, and audiovisual works, and recieved from the Register of copyrights a certificate of registration, dated March 7, 2016 as filing date, September 9, 2016 is the effective day of registration, PA 2-086-798.

4. Since then ~~the~~ (3/7/2016), plaintiff has published the works, and all copies of it made by plaintiff or under his authority or license, have been printed, bound, and published in strict conformity with the provisions of the Act of Copyright _ and all other laws governing copyright.

5. Since March 7, 2016, plaintiff has been and still is the sole proprietor of all rights, "title," and interest in and to the copyright in said ~~books~~ works.

6. After March 7, 2016 defendant(s) infringed said copyright by publishing and placing upon the market a "musical works" and/or "audiovisual work" entitled "Hit Up Brimin", which was copied largely from plaintiff's copyrighted works entitled "Hit Up Brimin."

7. Plaintiff has notified defendants that defendant(s) has infringed the copyright of plaintiff, and all defendants adhered to the takedown notice, except defendant's DatPiff.com, LLC., YouTube-Google, Inc.", and MTV. IT-VIACOM-TESTICANZONI MTV, IT. whom continue to infringe the copyright.

8. A copy of plaintiff's copyrighted work is hereto attached as exhibit M and a copy of defendant(s) infringing copy is hereto attached as exhibit C

(34)



9. After March 7, 2016, and continuosly since about May 22, 2016 defendant D.G.A.F records has been publishing, selling and otherwise marketing the works entitled "Hit Yo Brimin", and has thereby been engaging in unfair trade practices and unfair competition against plaintiff to plaintiff's irreparable damages. Since defendant Yard Down Muzik, Inc., initial publication, (without a license) Dec 2012, and continueing until the time of this filing, defendant(s) has been publishing, selling and otherwise marketing the works entitled "Hit Yo Brimin", and has thereby been engaging in unfair trade practices and unfair competition against plaintiff to plaintiff's irreparable damages,.

The P.M.CA Clearly outlines the requirements to obtain statutory license. 112 Stat 2901

(4) The Librarian of Congress shall also establish requirements by which copy-right owners may recieve reasonable notice of the use of their sound recordings under this section, and under which records of such use shall be kept and made available by transmitting organizations entitled to obtain a statutory license under this subsection.,,,,,

(8)(A) Any person who wishes to make a phonorecord of a sound recording under a statutory license in accordance with this subsection may do so without infringing the exclusive right of the copyright owner of the sound recording under section 106(1)

"(i) by complying with such notice requirements as the Librarian of Congress shall pre scribe by regulation and by paying royalty fees in accordance with this subsection, or

(ii) if such royalty fees have not been set, by ~~corporate~~ agreeing to pay such royalty fees as shall be determined in accordance with this subsection.

In the case at bar, the defendant(s) all failed to serve notice that they had published plaintiff's exclusive copyright, therefore failed to secure statutory license, and without authorization of the copyright owner, or license, that resulted in direct copyright ~~████████████~~ infringement.

(35)

1   It is clear, the decision not to serve notice to obtain a license, means any such
2   persons with interest in the recording "Hit Up Brimin", could not recieve
3   royalties, thus the publishing thereafter of plaintiff's exclusive copyright was
4   deliberate, intentional, direct copyright infringement. Defendant(s) has used
5   plaintiff's copyright, without mechanical licenses in an egregious, continuous, and
6   ongoing campaign of deliberate copyright infringement. The defendant(s)
7   policy of infringement first, apologize later, has become a familiar strategy
8   for many digital music services. "Copyright in a musical work includes the
9   right to make and distribute (Production & Distribution) the first sound recording.
10  Although, others are permitted to make subsequent sound recordings they must
11  compensate the copyright owner of the musical work under the compulsory
12  licensing provision of the law." (17 U.S.C § 115).
13       "Additionally, the federal Rules Of Civil Procedure govern the procedure in the
14  United States District Courts in all suits of a civil nature whether cognizable as cases
15  at law, or in equity, or admiralty, with the exceptions in Rule 8.1. They shall be
16  construed and administered to secure the just, speedy, an inexpensive determ-
17  ination of every action, copyright owners have the exclusive right to produce
18  the copyrighted work in copies, or to, authorize another to do so..." 17 U.S.C
19  § 106 (1)
20       Concluding, defendant(s) named in this complaint deliberately and
21  intentionally removed and/or altered "C.M.I.", in their publication of
22  plaintiff's exclusive copyright, "Hit Up Brimin", in violation of section 1202(b)
23       Removal or Alteration of Copyright Management Information...
24  NO PERSON SHALL WITHOUT THE AUTHORITY OF THE COPYRIGHT OWNER OR THE LAW,---
25       (1) intentionally remove or alter any copyright management information
26       (2) distribute or import for distribution copyright management
27  information knowing that the copyright management information has been
28  removed or altered without authority of the copyright owner or the law, or

(36)

1      (3) distribute, import for distribution or publicly perform works,
2  copies of works, or phonorecords, knowing that copyright management
3  information has been removed, altered without authority of the copyright
4  owner or the law, knowing, or with respects to civil remedies under
5  section 1203, having reasonable grounds to know, that it will induce, enable,
6  facilitate, or conceal an infringement of any right under this title.
7          For the reasons already stated in the complaint there were reasonable
8  grounds to know that C.M.I has been altered, not just because "Fingaz" and
9  "BigM'$", are introduced in the chorus right before "the performance of their
10  rap verse, but plaintiff clarify's the introduction in the first "bar" of his
11  verse.
12      "Bitch Hit Yo Brimin, Fingz And DuseM'$"
13
14
15      REQUEST FOR AWARD OF DAMAGES
16
17      Plaintiff understands that the case in bar raises a unique question
18  of law, in several respects. First is the contingencies agreement with
19  VordDownMuzik, Inc., As author of "Hit Yo Brimin", plaintiff and defendant
20  agreed that defendant could obtain license to do remixed rendition
21  of plaintiff original, as a work for hire situation, based upon contin-
22  gencies.. In such a situation, where copyright owner=author, does
23  video shoot, in collaboration with defendant, (where defendant breaches
24  one of contingencies) is incarcerated shortly thereafter, then where
25  defendant releases the video, as the "official video"(a clear misrepre-
26  sentation of the work) then failed to uphold the contingencies
27  agreed upon, (one of which was registering for copyright, the works)
28  whether plaintiff is entitled to a grace period for registration for

(37)

1  copyright, in relations to plaintiffs eligibility for statutory damages,
2  is a question before this court. Especially; as plaintiff has been
3  incarcerated since 1/3/13, and the defendant, Lord Down Muzik, Inc., published
4  plaintiffs exclusive copyright 1/26/13, at a time plaintiff was incarcerated
5  facing 23 years imprisonment. Also, as alleged, defendant breached each of the
6  contingencies, agreed upon, to obtain a license to remix," plaintiffs exclusive
7  copyright, which resulted in the severance of business ties, leaving plaintiff
8  to repair the damage, done as a result of Lord Down Muzik, Inc., publication
9  thereof.
10      In 2016, plaintiff (although still incarcerated, and upon
11  completion of an "18 month S.H.U term$^{FN1}$") completed registration for
12  copyright application form, and mailed it to his sister
13  Shanna Diane Grismore, whom assisted in providing the Librarian Of
14  Congress, it's Mandatory deposits, (copies of works) as plaintiff has no internet
15  access. On 3/7/16 the copyright office recieved a filing fee, and application
16  form, as well a the deposit, (Mandatory Deposit) two copies of "Hit Yo Brimin",
17  music, words, and audiovisual works, as well as multiple other unregistered works.
18  Plaintiffs sister (was appointed as additional contact) and recieved message from the
19  copyright office requiring additional fee, but due to prison lockdowns and
20  plaintiffs limited phone access, it took several months before that message was
21  relayed. ~~██████████████~~ On August 12th, 2016, California Dept. of Corrections
22  and Rehabilitation (C.D.C.R), finally released funds from plaintiff's inmate trust, (see
23  exhibit N) in the form of a check, to his sister, (whom had to cash the check, just to
24  pay the copyright office) It should be noted, it takes about a two to three weeks
25  time frame, from when inmate submits trust withdrawal request to C.D.C.R, to reach it's
26  recipient). September 09, 2016, is listed as the effective date of registration.
27      With consideration of the processing of plaintiff's inmate trust withdrawal
28  request by C.D.C.R alone, would place plaintiff's effective date

FN1  Secured Housing Unit term, is a disci-(38) plinary action, C.D.C.R sentences it's prisoners
who require more confined housing, and restrictive conditions